IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

LISA STANLEY,                              )
          Plaintiff,                       )
                                           )
               v.                          )        Civil No. 3:13cv726 (REP)
                                           )
CAROLYN W. COLVIN,                         )
Acting Commissioner of Social Security,    )
          Defendant.                       )
_____)

## REPORT AND RECOMMENDATION

Lisa Beck Stanley ("Plaintiff") is 52 years old and previously worked as a cashier, a

customer service manager and a grocery store manager. On November 29, 2010, Plaintiff

applied for Social Security Disability Benefits ("DIB") stemming from degenerative disc disease,

bone spurs and arthritis with an alleged onset date of October 27, 2009. Plaintiff's application

was denied both initially and upon reconsideration. On May 3, 2012, Plaintiff appeared and

testified before an Administrative Law Judge ("ALJ"). On May 29, 2012, the ALJ issued a

written decision denying Plaintiff's claims. On August 22, 2013, the Appeals Council denied

Plaintiff's request for review, rendering the ALJ's decision the final decision of the

Commissioner of Social Security.

Plaintiff now appeals the ALJ's decision in this Court pursuant to 42 U.S.C. § 405(g),

arguing that the ALJ erred in assessing Plaintiff's credibility and incorrectly determined

Plaintiff's residual functional capacity ("RFC"). The parties have submitted cross-motions for

summary judgment, which are now ripe for review. Having reviewed the parties' submissions

and the entire record[1] in this case, the court is now prepared to issue a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons that follow, the Court recommends that Plaintiff's Motion for Summary Judgment (ECF No. 8) be DENIED; that Defendant's Motion for Summary Judgment (ECF No. 10) be GRANTED; and that the final decision of the Commissioner be AFFIRMED.

## I. BACKGROUND

Because Plaintiff alleges that the ALJ erred in her assessment of Plaintiff's RFC by concluding that Plaintiff could perform light work, and that the ALJ incorrectly determined Plaintiff's credibility, Plaintiff's education and work history, medical history, function reports, state agency physician assessments, testimony and the vocational expert's ("VE") testimony are summarized below.

A.   Education and Work History

Plaintiff was 47 years old when she applied for DIB. (R. at 157.) Plaintiff graduated from high school. (R. at 36.) She worked at a grocery store from 1995 to 2009. (R. at 191.) Plaintiff stopped working on October 22, 2009. (R. at 38.)

Within the grocery store Plaintiff worked as a cashier/checker, a customer service manager, a manager and finally as a stock clerk. (R. at 52.) Most recently, Plaintiff worked as a store manager for Food Lion. (R. at 37.)

---

[1]     The administrative record in this case has been filed under seal pursuant to E.D. Va. Loc. R. 5 and 7(C). In accordance with these Rules, the Court will endeavor to exclude any personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for year of birth) and any financial account numbers from its consideration of Plaintiff's arguments and will further restrict its discussion of Plaintiff's medical information to the extent necessary to properly analyze the case.

B.  Medical Records

On November 4, 2009, Plaintiff sought treatment from David Antonio, M.D., reporting a spontaneous onset of right low back pain radiating into her right lower extremity. (R. at 335.) Plaintiff complained of experiencing lower back pain for the past week. (R. at 335.) Plaintiff had a restricted range of motion ("ROM") of the lumbar spine in all directions. (R. at 335.) She had some back pain, but no referred leg pain. (R. at 335.) A neurological evaluation of Plaintiff's lower extremities showed no abnormalities in motor sensation or reflexes. (R. at 335.) She had no significant spinal deformity or muscle spasms. (R. at 335.) X-rays of her lumbar spine showed increased lumbar lordosis and 50 percent disc space narrowing at L-5. (R. at 335.) Dr. Antonio diagnosed Plaintiff with lumbar spondylitis and sciatica, and prescribed Lortab and Aleve. (R. at 335.)

Plaintiff attended a follow-up appointment on November 11, 2009, and showed 30 percent improvement, but she still had significant pain on her right side. (R. at 334.) Dr. Antonio noted that Plaintiff walked with a somewhat antalgic gait, but she remained neurologically grossly intact. (R. at 334.) Dr. Antonio prescribed Percocet to Plaintiff, which was to be taken "judiciously." (R. at 334.) Dr. Antonio also restricted Plaintiff from work and instructed her to avoid lifting and bending for the following two weeks. (R. at 334.) Plaintiff returned on November 20, 2009, complaining of a severe increase in "sciatic type right leg pain." (R. at 333.) Dr. Antonio diagnosed her as having Lumbar HNP with right radiculopathy and recommended that Plaintiff receive an MRI as soon as possible. (R. at 333.)

On December 2, 2009, Ronald Washburn, M.D. performed a CT scan on Plaintiff and noted that she had mild degenerative spondylosis at L5-S1 and that Plaintiff may have had an extruded disc. (R. at 286.) He also noted that the rest of the scan was unremarkable. (R. at

3

286.) On December 7, 2009, Dr. Antonio reported that Plaintiff's CT scan revealed multilevel moderate degenerative changes, and he diagnosed her as having severe right sciatica. (R. at 332.) Dr. Antonio referred Plaintiff for an assessment of her candidacy for pain management epidural steroid injection ("ESI"). (R. at 332.)

On January 6, 2010, Plaintiff presented to Barbara Perona, M.D., complaining of low back pain, but denying any significant pain. (R. at 278.) Upon examination, Dr. Perona noted that Plaintiff walked with an antalgic gait, but that she had no tenderness to palpation of her paraspinous processes, except over the bony tip and that she had full motor strength in her lower extremities. (R. at 278.) Plaintiff was reluctant to proceed with an ESI and wanted time to think about it from home. (R. at 278.) Dr. Perona noted that no evidence of myelopathy existed. (R. at 278.)

On January 13, 2010, Plaintiff returned to Dr. Antonio complaining of "fairly significant right sciatica," and an onset of left sciatica. (R. at 331.) Dr. Antonio noted that pain medications Lortab and Darvocet failed to provide Plaintiff with relief, so he prescribed Percocet. (R. at 331.) A physical exam revealed that Plaintiff's reflexes were "symmetrically hyporeflexic" and that she had some back pain, but that her neurology was grossly intact. (R. at 331.)

On January 20, 2010, Plaintiff underwent an ESI procedure. (R. at 273.) On February 2, 2010, Dr. Antonio noted that this ESI procedure provided relief for eight or nine days, after which the pain began to recur. (R. at 330.) Plaintiff rated her sciatica pain as an eight out of ten. (R. at 330.) Dr. Antonio opined that Plaintiff was a good candidate for repeat ESI and that any treatment that could avoid surgery was "certainly worth trying." (R. at 330.) On February 17, 2010, Dr. Perona made similar findings to those of Dr. Antonio. (R. at 280.)

4

On February 17, 2010, Plaintiff underwent a second ESI procedure. (R. at 280-81.) That same day, Dr. Perona recommended that Plaintiff consider a third ESI procedure. (R. at 281.) On February 26, 2010, Dr. Antonio noted that Plaintiff showed "very minimal improvement" after a second ESI procedure. (R. at 329.) Dr. Antonio opined that Plaintiff would likely need surgery, but that she needed a myelogram to "further elucidate the pathology." (R. at 329.)

On March 31, 2010, Dr. Washburn performed a second CT scan on Plaintiff and found that no evidence of an extradural or intradural mass displacing nerve roots or compression of the nerve roots existed. (R. at 283.) Otherwise, the scan appeared unremarkable. (R. at 283.) Dr. Washburn also performed a myelogram on Plaintiff and observed no intradural or extradural filling defects and no displacement of the thecal sac. (R. at 285.) Overall, the lumbar myelogram was normal. (R. at 285.)

On April 9, 2010, Dr. Antonio noted that activity aggravated Plaintiff's pain and he referred Plaintiff to a neurologist. (R. at 328.) On May 19, 2010, Dr. Antonio opined that it would be an "excellent idea" to wean Plaintiff off narcotics altogether. (R. at 327.) Dr. Antonio then prescribed a combination of two Ibuprofen, two Tylenol and one Ultram three to four times a day to Plaintiff. (R. at 327.) Dr. Antonio also recommended that Plaintiff "walk around as much as comfortable," but noted that Plaintiff could not sustain a "full-fledged back rehab program." (R. at 327.) Dr. Antonio restricted Plaintiff from working for six more weeks. (R. at 327.)

On June 30, 2010, Plaintiff returned to Dr. Antonio, complaining of "fairly significant lower back pain" that radiated down her right leg to her knee. (R. at 326.) He noted that Plaintiff had been experiencing the symptoms for about one year and that neither Elavil nor

Chlorazine provided Plaintiff any relief. (R. at 326.) Dr. Antonio recommended that Plaintiff see a pain manager. (R. at 326.)

On September 27, 2010, Meenakshi Bindal, M.D. examined Plaintiff. (R. at 366-69.) He noted that Plaintiff had full range of motion, no tenderness and no deformities in her upper or lower extremities. (R. at 368.) He also noted that she walked with a slight antalgic gait, could walk on her heels and tiptoes with pain, and had near full muscle strength, intact sensation and normal reflexes. (R. at 368.) Dr. Bindal recommended an ESI, but Plaintiff preferred to wait. (R. at 369.)

On October 13, 2010, Plaintiff returned to Dr. Antonio, after receiving two ESI procedures from Dr. Bindal, and showed twenty percent improvement with her leg and back pain. (R. at 325.) Dr. Antonio also noted that physical therapy helped Plaintiff. (R. at 315, 325.) Dr. Antonio recommended a third ESI procedure and ordered Plaintiff to continue using Neurotin. (R. at 325.) On October 27, 2010, Dr. Antonio noted that Plaintiff presented new symptoms of acute pain on her left buttock, "radiating anterior thigh burning and numbness." (R. at 324.) A physical exam revealed that Plaintiff was neurologically intact with no abnormality in her motor sensation or reflexes and no significant swelling or tenderness of her lumbar spine. (R. at 324.) Dr. Antonio noted that Percocet and Lortab no longer provided relief and recommended switching Plaintiff from Flexeril to Skelaxin. (R. at 324.) Dr. Antonio also suggested that Plaintiff proceed with a third ESI when she returned from her vacation to Maine. (R. at 324.)

On November 17, 2010, Dr. Antonio noted that Plaintiff only sparingly took Percocet, but she continued to use Neurotin. (R. at 323.) He further reported that Plaintiff had been doing "fairly well" until she had an onset of sciatica, but that she appeared "reasonably well" during

6

this appointment. (R. at 323.) On December 9, 2010, Dr. Bindal reported that Plaintiff's pain

was overall 40-50 percent better and that Plaintiff had not suffered from severe pain in the past

month. (R. at 375.) On December 29, 2010, Dr. Antonio noted that Plaintiff walked without

"any obvious limp," and that her lumbar spine was about 50 percent restricted in all directions.

(R. at 456.) He ordered Plaintiff to "very sternly" take Percocet, and suggested that Plaintiff

continue to see him on an as-needed basis. (R. at 456.)

On February 14, 2011, Dr. Antonio stated that Plaintiff was tender and had restricted

ROM of her spine. (R. at 455.) On February 28, 2011, Dr. Antonio completed a disability form

for Plaintiff and indicated that Plaintiff could not work at all, because she could not stand or sit

and she could not lift on either an occasional or frequent basis. (R. at 400.) Dr. Antonio

reported that Plaintiff could never move or manipulate her body. (R. at 400.) He also indicated

that Plaintiff could never tolerate exposure to cold, dust or noise. (R. at 400.) Finally, Dr.

Antonio reported that Plaintiff suffered from "extreme" pain. (R. at 400.)

On March 18, 2011, Benjamin Contreras, M.D. examined Plaintiff and noted that her

laboratory results showed no evidence of extradural or intradural mass displacing nerve roots and

no compression on the nerve roots. (R. at 450.) Dr. Contreras discussed alternative treatment

plans with Plaintiff for her low back pain, lumbar degenerative disc disease and lumbar facet

arthropathy, which included neurosurgical intervention. (R. at 450.) Plaintiff, however,

preferred to continue with conservative management. (R. at 450.) Dr. Contreras also assessed

Plaintiff with an opioid dependence. (R. at 450.) On April 21, 2011, Dr. Contreras noted that

Plaintiff did not wish to undergo interventional pain procedures. (R. at 448.)

On May 2, 2011, Dr. Antonio noted that Plaintiff still experienced "fairly significant

problems" with persistent midline lower back pain that went down her right side to the knee. (R.

7

at 453.)  His examination of Plaintiff revealed that her lumbar spine was significantly restricted in all directions by 50 percent, that she had generalized weakness in both of her legs and that she walked with a slight antalgic gait, but that she had no obvious muscle atrophy, no leg pain and no obvious abnormality in motor sensation or reflexes.  (R. at 453.)  Dr. Antonio further noted that Plaintiff's ailment had lasted for over two years and opined that she had probably reached her maximum level of improvement.  (R. at 453.)

On May 18, 2011, Dr. Contreras indicated that Plaintiff had an unassisted gait and that she would not seek interventional procedures.  (R. at 447.)  On July 14, 2011, Plaintiff appeared to be in no acute distress and she reported that her medications helped her to function better.  (R. at 446.)  Again, Plaintiff was "definitely not interested" in a neurological intervention, because she preferred to continue with conservative management.  (R. at 446.)

On July 18, 2011, Dr. Antonio noted that Plaintiff's symptoms grew to include burning, stinging and numbness in three toes on her right foot.  (R. at 452.)  A neurological exam revealed normal upper and lower extremities and back pain.  (R. at 452.)

On August 16, 2011, Plaintiff told Dr. Contreras that her medications were "efficacious."  (R. at 445.)  Plaintiff again reported that she preferred to continue with conservative management, rather than seek neurosurgical intervention.  (R. at 445.)  On October 7, 2011, Dr. Contreras again noted that Plaintiff's medications were "efficacious," and that she had "good days and bad days," but that overall she was "okay."  (R. at 444.)  Plaintiff described her sleep as okay.  (R. at 444.)

C.  Function Reports

Plaintiff reported that she could walk approximately 500 yards, perform her personal care needs, prepare sandwiches or meals two to three times per week, wash laundry, talk on the

phone, watch television and shop in stores. (R. at 205-11.) Plaintiff's fiancé, Gregory Moon,

also completed a questionnaire on her behalf. (R. at 241-51.) He reported that Plaintiff watched

television, sat for brief periods, could lie down, read and used the computer for brief periods.

(R. at 242.) He further reported that Plaintiff provided for her own personal care as she was able

to dress, bathe, shave, feed herself and use the toilet. (R. at 243.) He also reported that Plaintiff

went outside one to two times per week and talked on the phone to her friends and relatives

daily. (R. at 245, 247.)

   D. State Agency Physicians' Assessments

      On January 31, 2011, Wyatt Beazley, M.D., a state agency physician, reviewed Plaintiff's

medical record and concluded that Plaintiff could perform light work. (R. at 61-66.) Dr.

Beazley opined that at least one of Plaintiff's medically determinable impairments could

reasonably be expected to produce her pain or other symptoms; however, he found that the

objective medical evidence alone did not substantiate her statements regarding the intensity,

persistence and functionally limiting effects of the symptoms. (R. at 62.) Further, he surmised

that Plaintiff was "not entirely credible" with respects to her statements describing her ailments.

(R. at 62.) Dr. Beazley also noted that Plaintiff had exertional limitations, but that she could

occasionally lift twenty pounds and could frequently lift ten pounds. (R. at 63.) Additionally, he

expressed that Plaintiff could be expected to stand, sit and/or walk for a total of about six hours

in an eight-hour work day. (R. at 63.) Finally, Dr. Beazley noted that Plaintiff had postural

limitations, but that she could occasionally climb ramps or stairs, frequently balance,

occasionally stoop, occasionally kneel and occasionally crawl, but never climb ladders, ropes or

scaffolds. (R. at 63.)

Dr. Beazley assessed that Plaintiff had no manipulative limitations. (R. at 64.) Dr. Beazley opined that Plaintiff's limitations would not prevent her from performing past relevant work ("PRW") as a store manager or assistant manager, as they were performed in the national economy. (R. at 65.) In his final assessment, Dr. Beazley determined that Plaintiff was not disabled. (R. at 65.)

On April 11, 2011, David Williams, M.D., a state agency physician, evaluated Plaintiff's medical record. (R. at 68-80.) Dr. Williams noted that Plaintiff's initial condition first caused pain on her right side, but that it had spread to her left side. (R. at 69.) Dr. Williams opined that Plaintiff's medical records demonstrated that Plaintiff retained the capacity for light work. (R. at 73.) Dr. Williams performed an assessment of vocational factors and determined that Plaintiff had the residual function capacity ("RFC") to perform her PRW as it is generally performed in the national economy. (R. at 78.) Dr. Williams further found that Plaintiff was not limited to unskilled work and that she had the capacity to perform light work. (R. at 78.)

E. Plaintiff's Testimony

On May 3, 2012, Plaintiff, represented by counsel, testified during a hearing in front of an ALJ. (R. at 28-57.) At the hearing, Plaintiff's counsel added to the record a surgical consultation from Johns Hopkins that determined Plaintiff would most likely "need surgery from her L3 to S1." (R. at 32.) However, Plaintiff's attorney was satisfied that the record contained all relevant materials for the ALJ to make a determination. (R. at 32.) The ALJ instructed Plaintiff's attorney that the record would remain open for one week for the inclusion of additional documents from the consultation. (R. at 57.)

Plaintiff testified that her severe limitations began in November 2009. (R. at 44.) She further testified that they likely resulted from sleeping on the floor at JFK airport, due to a

delayed flight. (R. at 45.) She testified that she had not yet decided to undergo a spinal fusion surgical procedure, even though the surgical consultation at Johns Hopkins recommended it. (R. at 46.)

Plaintiff testified that she could climb three stairs to enter her home with help from her fiancé. (R. at 35.) She further testified that she had not driven since October 9, 2009, due to her medications and because she would lose strength in her right leg. (R. at 36.) Her physical therapy had not provided any relief for her pain. (R. at 40.) She also stated that she could not perform any household chores including cooking and laundry. (R. at 44.) The ALJ asked if Plaintiff had any interaction with anyone, to which Plaintiff responded that she talked on the phone with her kids and that sometimes her son would visit her. (R. at 44.)

Plaintiff could sit for ten to fifteen minutes, walk for a couple of minutes, stand for five to ten minutes and lift a plate or glass. (R. at 47.) She had no issues using her hands, but she would not be able to pick items up if she were to drop them. (R. at 47-48.) Plaintiff could use a walk-in shower, dry herself off and put her clothes on, but she needed assistance shaving her legs. (R. at 49.) She did not use a chair in her shower and she could hold on to things for stability. (R. at 49.) Lastly, Plaintiff indicated that she suffered from panic attacks three to four times per week, but that medication would provide relief after about fifteen minutes. (R. at 49-51.)

F.  Vocational Expert Testimony

During the hearing, a VE testified that Plaintiff's work as cashier/checker qualified as unskilled work that required light exertion, that her past work as a customer service manager qualified as skilled work that required light exertion, that her past work as manager of a retail store required skilled work with light exertion and that her past work as a stock clerk was unskilled work that required heavy exertion. (R. at 52.)

The VE testified that an individual who could perform light work, could occasionally climb ramps and stairs, could never climb ladders, ropes or scaffolds, could frequently balance, and could occasionally stoop, kneel, crouch and crawl, would be able to perform all of Plaintiff's past work. (R. at 53.) The VE further testified that the hypothetical individual could perform other jobs within the national economy. (R. at 53.)

The VE testified that an individual limited to a sedentary level of exertion and who could only occasionally climb ramps and stairs; never climb ladders, ropes or scaffolds; occasionally balance and occasionally stoop, kneel, crouch and crawl, would be able to find work in the national economy, but would not be able to perform Plaintiff's PRW. (R. at 54.) Lastly, the VE stated that she was unaware of any job titles that required absolutely no bending. (R. at 56.)

## II. PROCEDURAL HISTORY

On November 29, 2010, Plaintiff applied for Social Security Disability Benefits ("DIB") stemming from degenerative disc disease, bone spurs and arthritis with an alleged onset date of October 27, 2009. (R. at 157-58.) The claim was denied both initially and upon reconsideration. (R. at 65, 79.) On May 3, 2012, Plaintiff, represented by counsel, and a VE testified before an ALJ. (R. at 28-31.) On May 29, 2012, the ALJ issued a written decision denying Plaintiff's claim, finding that Plaintiff was not disabled as defined by the Social Security Act. (R. at 22.) On August 22, 2013, the Appeals Council subsequently denied Plaintiff's request for review, thereby rendering the ALJ's decision the final decision of the Commissioner subject to judicial review by this Court. (R. at 1.)

## III. QUESTION PRESENTED

1. Did the ALJ err in assessing Plaintiff's credibility?

2. Did the ALJ err in assessing Plaintiff's Residual Functional Capacity?

## IV. STANDARD OF REVIEW

In reviewing the Commissioner's decision to deny benefits, the Court is limited to determining whether the Commissioner's decision was supported by substantial evidence on the record and whether the proper legal standards were applied in evaluating the evidence. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) (citing *Johnson v. Banhart*, 434 F.3d 650, 653 (4th Cir. 2005)). Substantial evidence is more than a scintilla, less than a preponderance and is the kind of relevant evidence a reasonable mind could accept as adequate to support a conclusion. *Hancock*, 667 F.3d at 472; *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (citations omitted).

To determine whether substantial evidence exists, the Court is required to examine the record as a whole, but it may not "'undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ].'" *Hancock*, 667 F.3d at 472, 476; *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig*, 76 F.3d at 589). In considering the decision of the Commissioner based on the record as a whole, the Court must "'take into account whatever in the record fairly detracts from its weight.'" *Breeden v. Weinberger*, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951)). The Commissioner's findings as to any fact — if the findings are supported by substantial evidence — are conclusive and must be affirmed regardless of whether the reviewing court disagrees with such findings. *Hancock*, 667 F.3d at 472 (citation omitted). If the ALJ's determination is not supported by substantial evidence on the record or if the ALJ has made an error of law, the Court must reverse the decision. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

A sequential evaluation of a claimant's work and medical history is required to determine if a claimant is eligible for benefits. 20 C.F.R. §§ 416.920, 404.1520; *Mastro*, 270 F.3d at 177.

The analysis is conducted for the Commissioner by the ALJ and it is that process that a court must examine on appeal to determine whether the correct legal standards were applied and whether the resulting decision of the Commissioner is supported by substantial evidence on the record.

The first step in the sequence is to determine whether the claimant was working at the time of the application and, if so, whether the work constituted "substantial gainful activity" ("SGA").[2] 20 C.F.R. §§ 416.920(b), 404.1520(b).  If a claimant's work constitutes SGA, the analysis ends and the claimant must be found "not disabled," regardless of any medical condition.  *Id.*  If the claimant establishes that she did not engage in SGA, the second step of the analysis requires her to prove that she has "a severe impairment . . . or combination of impairments which significantly limit[s] [her] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c); *see also* 20 C.F.R. § 404.1520(c).  To qualify as a severe impairment that entitles one to benefits under the Act, it must cause more than a minimal effect on one's ability to function.  20 C.F.R. § 404.1520(c).

At the third step, if the claimant has an impairment that meets or equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (listing of impairments) and lasts, or is expected to last, for twelve months or result in death, it constitutes a qualifying impairment and the analysis ends.  20 C.F.R. §§ 416.920(d), 404.1520(d).  If the impairment does not meet or equal a listed impairment, then the evaluation proceeds to the fourth step in which the ALJ is

---

[2]      SGA is work that is both substantial and gainful as defined by the Agency in the C.F.R.  Substantial work activity is "work activity that involves doing significant physical or mental activities.  Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before."  20 C.F.R. § 404.1572(a).  Gainful work activity is work activity done for "pay or profit, whether or not a profit is realized."  20 C.F.R. § 404.1572(b).  Taking care of oneself, performing household tasks or hobbies, therapy or school attendance and the like, are not generally considered substantial gainful activities.  20 C.F.R. § 404.1572(c).

required to determine whether the claimant can return to her PRW[3] based on an assessment of the claimant's RFC[4] and the "physical and mental demands of work [the claimant] has done in the past." 20 C.F.R. §§ 416.920(e), 404.1520(e). If such work can be performed, then benefits will not be awarded. *Id.* The burden of proof remains with the claimant through step four of the analysis, such that she must prove that her limitations preclude her from past relevant work. *Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987); *Hancock,* 667 F.3d at 472 (citation omitted).

However, if the claimant cannot perform her past work, the burden then shifts to the Commissioner at the fifth step to show that, considering the claimant's age, education, work experience and RFC, the claimant is capable of performing other work that is available in significant numbers in the national economy. 20 C.F.R. §§ 416.920(f), 404.1520(f); *Hancock,* 667 F.3d at 473; *Powers v. Apfel,* 207 F.3d 431, 436 (7th Cir. 2000) (citing *Yuckert,* 482 U.S. at 146, n.5). The Commissioner can carry her burden in the final step with the testimony of a VE. When a VE is called to testify, the ALJ's function is to pose hypothetical questions that accurately represent the claimant's RFC based on all evidence on record and a fair description of all of the claimant's impairments, so that the VE can offer testimony about any jobs existing in the national economy that the claimant can perform. *Walker v. Bowen,* 889 F.2d 47, 50 (4th Cir. 1989). Only when the hypothetical posed represents *all* of the claimant's substantiated

---

[3]    Past relevant work is defined as SGA in the past fifteen years that lasted long enough for an individual to learn the basic job functions involved. 20 C.F.R. §§ 416.965(a), 404.1565(a).

[4]    RFC is defined as "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p. When assessing the RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (*i.e.*, 8 hours a day, 5 days a week, or an equivalent work schedule) and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. *Id.* (footnote omitted).

impairments will the testimony of the VE be "relevant or helpful." *Id.* If the ALJ finds that the

claimant is not capable of SGA, then the claimant is found to be disabled and is accordingly

entitled to benefits. 20 C.F.R. §§ 416.920(f)(1), 404.1520(f)(1).

## V. ANALYSIS

### A.    The ALJ's Decision

The ALJ held a hearing on May 3, 2012, during which Plaintiff, represented by counsel,

and a VE testified. (R. at 28-57.) On May 29, 2012, the ALJ rendered her decision in a written

opinion and determined that Plaintiff was not disabled under the Act. (R. at 11.) The ALJ made

her decision after a thorough review of the entire record. (R. at 11, 13.)

The ALJ followed the five-step sequential evaluation process established by the Act in

analyzing whether Plaintiff was disabled. (R. at 11-13); *see also* 20 C.F.R. § 404.1520(a). First,

the ALJ determined that Plaintiff had not engaged in substantially gainful activity since October

29, 2009 — Plaintiff's alleged onset date. (R. at 13.) At step two, the ALJ determined that

Plaintiff suffered a severe impairment in the form of lumbar spondylosis with radiculopathy.

(R. at 13.) The ALJ also determined that Plaintiff had a documented history of anxiety and

depression, but that the symptoms had improved and that those issues did not cause more than

minimal limitation on her ability to perform basic mental work and were, therefore, nonsevere.

(R. at 13.) At step three, the ALJ determined that Plaintiff did not have an impairment or

combination of impairments that met or medically equaled the severity of one of the listed

impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 14); *see* 20 C.F.R.

§§ 404.1520(d), 404.1525, 404.1526, 404.920(d), 416.925, 416.926.

At step four, the ALJ determined, "after careful consideration of the entire record," that

Plaintiff had the RFC to perform light work as defined in the regulations.  (R. at 15.)  Plaintiff

16

could stand, sit and/or walk for a total of about six hours in an eight-hour work day. (R. at 19.) Plaintiff could frequently balance and occasionally stoop, kneel, crouch and crawl. (R. at 15.) Additionally, Plaintiff was limited to lifting or carrying twenty pounds occasionally and ten pounds frequently. (R. at 19.)

In reaching this conclusion, the ALJ considered objective medical evidence and other evidence. (R. at 15.) The ALJ used a two-step analysis to consider whether the medically determinable physical or mental impairments could reasonably be expected to produce Plaintiff's pain and symptoms, and, if so, the extent to which the symptoms limited Plaintiff's functioning. (R. at 15.) The ALJ determined that Plaintiff's impairments could reasonably be expected to cause the alleged symptoms, but that Plaintiff's statements about the intensity, persistence and limiting effects of the symptoms were not credible to the extent that they were inconsistent with the RFC. (R. at 15-16.) The ALJ based her RFC assessment on the medical evidence within Plaintiff's record, her conservative course of treatment and the mild objective findings in the record. (R. at 16-19.) She concluded that Plaintiff's allegations of complete inability to work were not supported by the medical signs and findings, and were, therefore, inconsistent with the record. (R. at 19.)

At step four, the ALJ concluded that Plaintiff is capable of performing PRW as a cashier, customer service manager or retail manager. (R. at 20.) The ALJ specifically noted that this work would not require the performance of work-related activities precluded by Plaintiff's RFC. (R. at 20.) Finally, at step five, the ALJ found that, based on Plaintiff's age, education, work experience and RFC, there were other jobs within the national economy that Plaintiff could perform. (R. at 20.)

Plaintiff challenges the ALJ's decision, arguing that the ALJ failed to properly address Plaintiff's subjective complaints and thereby incorrectly assessed Plaintiff's credibility and her RFC. (Pl.'s Mem. in Supp. of Mot. for Summ. J. ("Pl.'s Mem.") (ECF No. 9) at 3-13.) Defendant maintains that substantial evidence supports the ALJ's determinations. (Def.'s Mot. for Summ. J. (Def.'s Mem.") (ECF No. 10) at 10-16.)

B. The ALJ did not err in assessing Plaintiff's credibility

Plaintiff argues that substantial evidence does not support the ALJ's determination regarding Plaintiff's credibility, because the medical records indicated that, although the treatment was conservative, it had failed to provide lasting relief. (Pl.'s Mem. at 5.) Defendant argues that substantial evidence supports the ALJ's credibility determination. (Def.'s Mem. at 14-16.)

After step three of the ALJ's sequential analysis, but before deciding whether a claimant can perform past relevant work at step four, the ALJ must determine the claimant's RFC. 20 C.F.R. §§ 416.920(e)-(f), 416.945(a)(1). The RFC must incorporate impairments supported by the objective medical evidence in the record and those impairments that are based on the claimant's credible complaints. In evaluating a claimant's subjective symptoms, the ALJ must follow a two-step analysis. *Craig*, 76 F.3d at 594; *see also* SSR 96-7p; 20 C.F.R. §§ 404.1529(a), 416.929(a). The first step is to determine whether there is a medically determinable physical or mental impairment or impairments that reasonably could produce the individual's pain or other related symptoms. SSR 96-7p, at 5, n.3; *see also* SSR 96-8p, at 13 (an "RFC assessment must be based on all of the relevant evidence in the case record"). If the underlying impairment reasonably could be expected to produce the individual's pain, then the second part of the analysis requires the ALJ to evaluate a claimant's statements about the

18

intensity and persistence of the pain and the extent to which it affects the individual's ability to work. *Craig*, 76 F.3d at 595. The ALJ's evaluation must take into account "all the available evidence," including a credibility finding of the claimant's statements regarding the extent of the symptoms, and the ALJ must provide specific reasons for the weight given to the individual's statements. *Craig*, 76 F.3d at 595-96; SSR 96-7p, at 5-6, 11.

This Court must give great deference to the ALJ's credibility determinations. *Eldeco, Inc. v. NLRD*, 132 F.3d 1007, 1011 (4th Cir. 1997). The Fourth Circuit has determined that "[w]hen factual findings rest upon credibility determinations, they should be accepted by the reviewing court absent 'exceptional circumstances.'" *Id.* (quoting *NLRB v. Air Prods. & Chems., Inc.*, 717 F.2d 141, 145 (4th Cir. 1983)). Therefore, this Court must accept the ALJ's factual findings and credibility determinations unless "'a credibility determination is unreasonable, contradicts other findings of fact, or is based on an inadequate reason or no reason at all.'" *Id.* (quoting *NLRB v. McCullough Envtl. Servs., Inc.*, 5 F.3d 923, 928 (5th Cir. 1993)).

Furthermore, it is well established that Plaintiff's subjective allegations of pain are not, standing alone, conclusive evidence that Plaintiff is disabled. *Mickles v. Shalala*, 29 F.3d 918, 919 (4th Cir. 1994). The Fourth Circuit has determined that "subjective claims of pain must be supported by objective medical evidence showing the existence of a medical impairment which could reasonably be expected to produce the actual pain, in the amount and degree, alleged by the claimant." *Craig*, 76 F.3d at 591.

Here, the ALJ ultimately concluded that, while Plaintiff suffered impairments that could reasonably be expected to produce her alleged symptoms, Plaintiff's testimony and statements describing the durations, frequency and intensity as to her condition were inconsistent with the objective evidence. (R. at 15-16.) Plaintiff argues that the ALJ improperly rejected her

credibility, because she did not properly account for Plaintiff's subjective pain. (Pl.'s Mem. at 3-7.) However, as long as substantial evidence in the record supported the conclusion, this Court must give great deference to the ALJ's credibility determinations. *Eldeco*, 132 F.3d at 1011. In reaching her decision, the ALJ noted that Plaintiff's reported activities included shopping, using a computer, receiving visits from her children, watching television, talking on the phone, preparing simple meals and taking two separate vacations to Maine. (R. at 19.) These activities indicated levels of functioning that were inconsistent with the severity of her allegations. (R. at 19.) Furthermore, the ALJ extensively documented objective medical evidence that was inconsistent with the severity of Plaintiff's allegations. (R. at 16-19.) Thus, the ALJ applied the correct legal standard when assessing Plaintiff's credibility and substantial evidence supports the ALJ's determination regarding Plaintiff's credibility.

Objective medical evidence supports the ALJ's credibility assessment. Although Plaintiff complained that her pain "does not go away" and that it was constant, Dr. Contreras noted that Plaintiff's medications worked to relieve the pain. (R. at 444.) Moreover, after Plaintiff received two ESI procedures from Dr. Bindal, Plaintiff showed twenty percent improvement with her leg and back pain. (R. at 325.) Dr. Antonio also noted that Plaintiff felt relief after physical therapy. (R. at 325.) Finally, on December 9, 2010, Dr. Bindal reported that Plaintiff's pain was overall 40-50 percent better. (R. at 375.)

Plaintiff consistently received recommendations to consider more aggressive treatment than the conservative treatment that she was undergoing. (R. at 369, 445-46, 450.) Plaintiff instead elected to forgo more aggressive treatment and chose to continue a conservative treatment plan. (R. at 369, 372, 376, 445-46, 450.) Furthermore, Dr. Contreras assessed Plaintiff with an opioid dependence and noted that Plaintiff was uninterested in interventional pain

procedures. (R. at 445-48, 450.) Moreover, Plaintiff's testimony and written self-evaluation reports further support the ALJ's determination. Plaintiff was able to walk for 500 yards, perform her personal care needs, prepare sandwiches or meals two to three times per week, wash laundry, talk on the phone, watch television and shop in stores. (R. at 205-11.)

Finally, although Dr. Antonio indicated on a Social Security Disability worksheet that Plaintiff had severe limitations of her physical abilities, that she suffered from extreme pain and that she would not be able work any hours per day, this assessment was not in keeping with other records by Dr. Antonio of Plaintiff's treatment. (R. at 323-36, 400, 451-478.) Indeed, Dr. Antonio himself noted that Plaintiff's upper and lower extremities were normal. (R. at 335, 452.) Furthermore, Dr. Antonio's disability worksheet assessment does not coincide with the other treating and reviewing physicians' assessments of Plaintiff, as discussed above. (R. at 278, 283, 335, 389, 400, 444.) Therefore, based on objective medical evidence and Plaintiff's own reported activities, substantial evidence supports the ALJ's credibility determination.

C. Substantial evidence supports the ALJ's assessment of Plaintiff's RFC

Plaintiff argues that the ALJ erroneously assessed Plaintiff's RFC by failing to perform a function-by-function analysis. (Pl.'s Mem. at 3-8.) Specifically, Plaintiff argues that the ALJ failed to properly evaluate pertinent medical evidence and also failed to properly consider Plaintiff's testimony, as well as the questionnaire completed by Plaintiff's fiancé regarding Plaintiff's RFC. (Pl.'s Mem. at 3-7.) Defendant maintains that substantial evidence supports the ALJ's RFC assessment. (Def.'s Mem. at 10-14.)

After step three of the ALJ's sequential analysis, but before deciding whether a claimant can perform past relevant work at step four, the ALJ must determine the claimant's RFC. 20 C.F.R. §§ 416.902(e)-(f), 416.945(a)(1). In analyzing a claimant's abilities, an ALJ first assesses

21

the nature and extent of the claimant's physical limitations and then determines the claimant's

RFC for work activity on a regular and continuing basis. 20 C.F.R. § 404.1545(b).  Generally,

the claimant bears the responsibility to provide the evidence that the ALJ utilizes in making his

RFC determination; however, before a determination is made that a claimant is not disabled, the

ALJ is responsible for developing the claimant's complete medical history, including scheduling

consultative examinations if necessary.  20 C.F.R. § 404.1415(a)(3).  When making an RFC

determination, the ALJ must incorporate impairments supported by the objective medical

evidence in the record and those impairments that are based on the claimant's credible

complaints.  Moreover, the ALJ must consider all of the medical evidence in the record.  *Craig*,

76 F.3d at 594-95; SSR 96-7p, at 5, n.3; *see also* SSR 96-8p, at 13 ("RFC assessment must be

based on *all* of the relevant evidence in the case record") (emphasis added).

Here, the ALJ found that Plaintiff maintained the ability to perform light work.  (R. at

15.)  Plaintiff could stand, sit and/or walk for a total of about six hours during an eight-hour work

day.  (R. at 19.)  Plaintiff could frequently balance and occasionally stoop, kneel, crouch and

crawl.  (R. at 15.)  Additionally, Plaintiff was limited to lifting or carrying twenty pounds

occasionally and ten pounds frequently.  (R. at 19.)  When determining Plaintiff's RFC, the ALJ

extensively considered all of the evidence regarding Plaintiff's symptoms in compliance with the

rulings and regulations.  (R. at 13-22.)  Specifically, the ALJ properly considered Plaintiff's

limitations that resulted from chronic mid-back pain that radiated down her right leg and into her

left leg.  (R. at 14.)  The ALJ also properly considered all of the pertinent medical records in her

assessment of Plaintiff's lumbar spodylosis with radiculopathy and its impact on her RFC.  (R. at

16-19.)

Plaintiff argues that the ALJ's RFC determination was flawed, because she did not consider the limitations to Plaintiff's ability to stand and walk caused by Plaintiff's herniated disc at L5-S1 with bilateral lower extremity radiculopathy. (Pl.'s Mem. at 5-6.) Contrary to Plaintiff's assertion, the ALJ did consider alleged limitations to Plaintiff's ability to stand and walk. (R. at 15.) The ALJ specifically discussed Plaintiff's diagnostic studies, including an x-ray, CT scans and myelogram. (R. at 16-17.) The ALJ also discussed evaluations of Plaintiff's ability to walk, which included her ability to heel and toe walk. (R. at 16-19.) Substantial evidence supports the ALJ's evaluation because, although Plaintiff was documented as walking with a slight limp or a slight antalgic gate, Plaintiff was elsewhere reported as walking with a normal, unassisted gait. (R. at 368, 447, 453.) Moreover, neurological examinations of Plaintiff revealed that she was "grossly intact," and that her extremities were neither tender nor deformed and displayed a full ROM. (R. at 331, 368.)

Moreover, the ALJ comprehensively took into account Plaintiff's own testimony, as well as that of her fiancé, presented in the Third Party Function report. (R. at 15.) Contrary to Plaintiff's argument, "'there is no particular language or format that an ALJ must use in his or her analysis as long as there is sufficient development of the record and explanation of findings to permit meaningful review.'" *Clark v. Comm'r of Soc. Sec.*, 2010 WL 2730622, at* 17 (E.D.Va. June 3, 2010) (quoting *Jones v. Barnhart*, 364 F.3d 501, 505 (3rd Cir. 2004)). The ALJ sufficiently developed the record and explained her findings thoroughly. The ALJ comprehensively reviewed and discussed the specific medical and non-medical evidence to support her RFC assessment. (R. at 15-19.) Her analysis included Plaintiff's subjective complaints of pain, Plaintiff's testimony about her limitations with respect to standing and sitting, her daily activities and the questionnaire completed by Plaintiff's fiancé. (R. at 15-16,

19.) The Third Party Function report was duplicative of Plaintiff's own testimony and offered no new insight for the ALJ to consider. (R. at 15-19, 38-39, 205-11, 241-49.) Moreover, it was within the ALJ's discretion to use and give weight to the Third Party Function report. 20 C.F.R. §404.1513(d)(4); SSR 96-7p. As discussed above, because substantial evidence supports the ALJ's credibility determination, the ALJ's ultimate RFC was not improper on the grounds that the ALJ wrongly discounted Plaintiff's testimony.

The ALJ accounted for Plaintiff's functional limitations documented in the record. (R. at 15-19.) The ALJ determined that the objective medical evidence did not demonstrate greater functional limitations than those accounted for by the RFC. (R. at 19, 21.) Substantial evidence supports the ALJ's determination. Plaintiff's diagnostic studies revealed only mild degenerative changes of her lumbar spine and no displacement or compression of her nerve root. (R. at 16-17, 283, 286, 369, 481.) Further, physical examinations of Plaintiff were generally unremarkable and she elected a conservative course of treatment despite some doctors recommending more aggressive treatments. (R. at 278, 324-25, 327, 369, 392, 403, 444.)

The evidence also indicates that Plaintiff's medical condition did not result in abnormalities in her motor sensation or reflexes and that she was able to toe and heel walk. (R. at 335, 403.) Further, both Dr. Beazley and Dr. Williams opined that Plaintiff was capable of performing light work that involved sitting, standing and walking for six hours during an eight-hour day, further substantiating the ALJ's decision. (R. at 19, 63-64, 76-77); 20 C.F.R. §404.1527(e)(2)(i) (state agency physicians are highly qualified physicians who are also experts in Social Security disability evaluation and their opinions are entitled to great weight).

Moreover, Plaintiff's own daily activities support the ALJ's determination that Plaintiff could perform light work. Plaintiff reported that she could watch television, sit for brief periods,

lie down, and read and use the computer for brief periods.  (R. at 242.)  Plaintiff also provided

for her own personal care and she was able to dress, bathe, shave, feed herself and use the toilet.

(R. at 243.)

Therefore, based on the objective medical evidence, state physicians' opinions and

Plaintiff's daily activities, substantial evidence supports the ALJ's RFC assessment.

## VI.  CONCLUSION

For the reasons set forth above, the Court recommends that Plaintiff's Motion for

Summary Judgment (ECF No. 8) be DENIED; that Defendant's Motion for Summary Judgment

(ECF No. 10) be GRANTED; and that the final decision of the Commissioner be AFFIRMED.

Let the Clerk forward a copy of this Report and Recommendation to the Honorable

Robert E. Payne and to all counsel of record.

## NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and**

**recommendations of the Magistrate Judge contained in the foregoing report within**

**fourteen (14) days after being served with a copy of this report may result in the waiver of**

**any right to a *de novo* review of the determinations contained in the report and such failure**

**may bar you from attacking on appeal the findings and conclusions accepted and adopted**

**by the District Judge except upon grounds of plain error.**

/s/
David J. Novak
United States Magistrate Judge

Richmond, Virginia
Date:  August 6, 2014

25